# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

TOMMY L. BROWN, )
)
        Plaintiff, )
)
v. ) CASE NO. CIV-05-330-JHP
)
JO ANNE B. BARNHART, )
Commissioner, Social Security )
Administration, )
)
        Defendant. )

## FINDINGS AND RECOMMENDATIONS

Claimant, Tommy L. Brown, pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED AND REMANDED for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment..." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy..." Id.

§423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. See 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term substantial evidence has been interpreted by the U.S. Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not reweigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also Casias, 933 F.2d at 800-01.

## Claimant's Background

---

[1] Step one requires claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. See id. §§ 404.1521, 416.921. If claimant is engaged in substantial gainful activity (step one) or if claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity (RFC) to perform his past relevant work. If claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

Claimant was born January 21, 1957, and was 47 years old at the time of the hearing. He has a high school education. Claimant previously worked as a warehouse worker, commercial cleaner, order filler, and route delivery driver. Claimant alleges an onset date for disability of November 1, 2002, due to degenerative disc disease and depression. He also claims to suffer from hearing loss.

## Procedural History

On January 13, 2003, Claimant protectively filed for disability benefits under Title II (42 U.S.C. § 401, et seq.). Claimant's application for benefits was denied in its entirety initially and on reconsideration. ALJ Lance K. Hiltbrand conducted a hearing on Claimant's application on November 3, 2004 in Ardmore, Oklahoma. By decision dated December 20, 2004, the ALJ found that Claimant was not disabled at any time through the date of the decision. On June 7, 2005, the Appeals Council denied review of the ALJ's findings. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined Claimant retained the residual functional capacity (RFC) to perform work that exists in significant numbers in the national and regional economies.

## Review

Claimant asserts that the Commissioner, through the ALJ and Appeals Council, erred in (1) failing to appropriately assess mental limitations and include those limitations in hypothetical questions submitted to the Vocational Expert (VE); (2) failing to attribute the appropriate weight

3

to the opinion from the treating physician which resulted in a flawed RFC assessment; (3) relying on flawed testimony from the VE that failed to identify any transferable job skills; and (4) failing to perform a proper credibility determination.

### **Mental Limitations Assessment**

Claimant contends that ALJ failed to properly assess his mental impairments under the special technique contemplated by the Regulations. Further, he argues the ALJ's failure to accurately assess all of his mental limitations resulted in imprecise hypothetical questions being submitted to the VE.

Here, the ALJ determined Claimant had a severe impairment resulting from depression. However, the ALJ also commented that Claimant had not seen any mental health specialist for treatment and has not taken any medication for depression. (Tr. 19) The ALJ determined Claimant retained the RFC to perform light work with additional limitations for only occasional stooping. He had limited hearing and feigned hearing loss in the right ear which limited the ability to work around extreme noises. He was found to have a moderate level of pain, fatigue, and anxiety. (Tr. 21) The hypothetical questions submitted to the VE were consistent with the ALJ's RFC assessment with the addition of a limitation based on Claimant's anxiety that would restrict the ability to work in a competitive environment. (Tr. 381)

When evidence is presented showing the presence of a mental impairment that prevents a claimant from working, the process for evaluating these impairments is set forth at 20 C.F.R. § 404.1520(a) and the Listing of Impairments. See: Andrade v. Secretary of Health & Human Services, 985 F.2d 1045, 1048 (10th Cir. 1993). The ALJ's initial responsibility is to determine the presence or absence of "certain medical findings which have been found especially relevant

to the ability to work." 20 C.F.R. § 404.1520 (a) and (b). Secondly, an evaluation should be made regarding the functional loss resulting from the impairment. 20 C.F.R. § 404.1520(b)(3).

Here, the ALJ found a severe impairment from depression but failed to explain in his decision how Claimant's depression would affect the ability to perform substantial gainful activity. The ALJ has failed to evaluate the functional loss resulting from the impairment. On remand, the ALJ is directed to discuss Claimant's functional loss and submit any limitations in hypothetical questions submitted to the VE.

### The Opinion of Dr. Wright

Claimant also asserts the ALJ improperly rejected the report from the treating physician, Dr. Michael M. Wright. Claimant was referred by the Oklahoma Workers' Compensation Court for an Independent Medical Evaluation and treatment subsequent to a work related injury which occurred in November, 2000 with a re-injury on November 8, 2001. On August 22, 2002, Dr. Wright released Claimant to return to sedentary work with no lifting over ten pounds. He was also restricted to work that would allow the opportunity to frequently change positions with no continuous sitting for more than two hours. (Tr. 194-196) Dr. Wright conducted a follow-up evaluation on October 24, 2002 at which time he released Claimant from treatment with permanent restrictions which allowed for light to sedentary work with maximum lifting of ten to fifteen pounds and only occasional bending and stooping. (Tr. 197)

The ALJ included a discussion of Dr. Wright's report in his decision. (Tr. 17) However, he omitted any discussion of the weight attributed to the opinion of Dr. Wright. Further, the ALJ failed to discuss why his RFC assessment was inconsistent with Dr. Wright's lifting restrictions and the additional limitation on bending. To support his RFC assessment, the ALJ stated that he

5

agreed with the determinations made by the State Agency physicians. (Tr. 21)

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (Quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F. R. § 404.1527." Id. (quotation omitted). The factors referenced in that section are : (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01. (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion 20 C.F.R. § 404.1527 (d)(2). Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004) (citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and reason for that weight." Id. "Finally, if the ALJ

rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

Here, the Commissioner argues that the value of the reports from Dr. Wright are "diminished" because the opinion was generated prior to the alleged onset date and while Claimant was continuing to work. (Def Brief at 6.) This Court finds the Commissioner's position to be inapposite. Dr. Wright's release from treatment with permanent restrictions dated October 24, 2002 is in close proximity to Claimant's alleged onset date of November 1, 2002. Even if this court were to conclude that this report reflects an opinion concerning Claimant's condition prior to his alleged onset date, the ALJ is not relieved of his responsibility to consider this report and discuss the weight attributed to the report. Hamblin v. Barnhart, 365 F.3d 1208, 1223 (10th Cir. 2004). Based on the failure to discuss the weight attributed to the report from Dr. Wright and to provide "good reasons" for the weight assigned to the report, the ALJ's RFC assessment is not supported by substantial evidence.

## Transferable Job Skills

Claimant argues the ALJ improperly relied on testimony from the VE that did not provide specific skills which were transferable to other jobs. Here, the VE testified that a hypothetical individual matching Claimant's characteristics would have transferable skills as a sales clerk in the light, unskilled category. The VE identified this listing in the Dictionary of Occupational Titles (DOT) and the number of jobs in the regional and national economy. The VE also listed jobs in the sedentary/semi-skilled range and light/semi-skilled range. (Tr. 382) The ALJ determined Claimant had transferable skills to jobs that exist in significant numbers in the national and regional economies. Examples of these jobs were listed in both light, semi-

7

skilled work and sedentary, semi-skilled categories. (Tr. 24)

At step five of the sequential analysis, the ALJ bears the burden to show that there are jobs in the regional and national economies that a claimant can perform with the limitations the ALJ has found to exist. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citing, inter alia, 42 U.S.C. § 423(d)(2)(A)). The burden does not rest with the Claimant to produce or develop vocational evidence at step five. Id. At 1491. In a case such as this one, the ALJ "must cite examples of occupations or jobs the individual can do and provide a statement of the incidence of such work in the region where the individual lives or in several regions of the country." Soc. Sec. R. 96-9p, 1996 WL 374185 at 5.

This Court finds the ALJ's findings at step five are consistent with the requirements placed upon him by the prevailing case law. As previously discussed, however, the ALJ erred by failing to include all Claimant's mental limitations in the hypothetical questions submitted to the VE. Thus, the ALJ's findings are not supported by substantial evidence.

## **Credibility Analysis**

Lastly, Claimant objects to the ALJ's characterization of his " 'feigned' hearing loss in the right ear." Claimant also takes issue with the ALJ's finding that "the medical records showed no evidence of hearing loss and the claimant did well in general conversations." (Tr. 20)

It is well-established that "findings linked to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determination are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

8

The medical evidence shows Claimant was treated by Dr. S. Dempewolf on August 27, 2002 for a possible hearing loss subsequent to a dry ice explosion that occurred on the job. At that time, Claimant was complaining of a muffled sensation in the right ear. Historically, Claimant was found to have loss of hearing since birth in the left ear.(Tr. 251) An audiometric evaluation showed profound hearing loss in the left ear with high frequency hearing loss in the right ear. (Tr. 252-253)

In this case, the ALJ determined Claimant suffered from hearing loss in both ears. These findings appear to be contradicted in his decision wherein he stated that Claimant "related hearing loss but no medical records were in the file to document this. Claimant was able to hear conversational voices fine during this hearing." (Tr. 19) In his RFC assessment, the ALJ found Claimant "may have limited hearing and feigned hearing loss in the right ear and should not work around extreme noises." (Tr. 21) Notably, the ALJ failed to include any discussion of the medical reports from Dr. Dempewolf.

The ALJ failed to affirmatively link his conclusion to medical evidence in the record. The ALJ appears to have "eye-balled" Claimant's testimony with regard to the alleged effect of his condition and determined it could not be credible in light of the evidence. Express linkage is required to support the decision.

## Conclusion

The Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, pursuant to the fourth sentence of 42 U.S.C. § 405(g), the Magistrate Judge finds for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be

9

REVERSED AND REMANDED for further administrative proceedings as set forth herein. Parties are herewith given ten (10) days from the date of this service to file with the Clerk of the court any objections with supporting brief. Failure to object to the Findings and Recommendations within ten (10) days will preclude appellate review of the judgment of the District Court based on such findings.

DATED this 22nd day of June, 2006.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE